UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAWUD FITZGERALD,

    Petitioner,

v.

CHARLES WARREN, et al.,

    Respondents.

Civil Action No. 13-1163 (JBS)

**OPINION**

**APPEARANCES:**

    DAWUD FITZGERALD, 947706B
    New Jersey State Prison
    P.O. Box 861
    Trenton, New Jersey 08625
        *Petitioner Pro Se*

    UNION COUNTY PROSECUTOR
        by:  Sara Beth Liebman, Esq.
    32 Rahway Avenue
    Elizabeth, New Jersey 07202
        *Attorneys for Respondents*

**SIMANDLE, Chief Judge**[1]

    Dawud Fitzgerald ("Dawud") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction imposed in the Superior Court of New Jersey, Law Division, Union County, on April 22, 2005, and amended on

---

[1] This case was reassigned to the undersigned following the death of the Hon. Dickinson R. Debevoise in August, 2015.

November 25, 2008, after a jury found him[2] guilty of being a kingpin of a narcotics trafficking network, conspiracy to distribute heroin and cocaine, operating a drug production facility and 18 related charges.  The State filed an Answer with the record and Dawud filed a Reply.  After carefully reviewing the state court record and the arguments of the parties, this Court will deny the Petition on the merits with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

A.  The Crimes

Dawud challenges a sentence of life imprisonment plus 100 years imposed after a jury convicted him of being a kingpin of a drug trafficking network which operated throughout New Jersey, conspiracy to distribute heroin and cocaine, employment of a juvenile in a drug distribution scheme, operating a drug production facility, and other charges.  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and

---

[2] Dawud Fitzgerald was tried with his brothers, Dawshon Fitzgerald and Dawmeen Fitzgerald, and their uncle, John Fitzgerald.  Dawshon, Dawud and Dawmeen were found guilty on all 21 counts in the indictment, and John was found guilty on some counts. See State v. Fitzgerald, 2008 WL 2572617 (N.J. Super. Ct., App. Div., June 30, 2008), certif. denied, 196 N.J. 597 (2008).

2

convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Dawud has not rebutted the factual findings of the New Jersey courts, this Court will rely on those findings.

The Appellate Division found that for several years the Fitzgeralds "were trafficking cocaine and heroin throughout New Jersey" and that they employed several persons "who were involved in selling, transporting, and packaging the narcotics." State v. Fitzgerald, 2012 WL 469779 (N.J. Super. Ct., App. Div., Feb. 15, 2012), certif. denied, 212 N.J. 460 (2012).  Dawshon was in charge of the heroin, Dawmeen was responsible for the cocaine, and Dawud was the person who ensured that operations ran smoothly.  The Fitzgerald organization used an apartment in Newark as a lab for cutting and packaging the drugs and an apartment in Elizabeth for sales.  After obtaining warrants, members of the Union County Prosecutor's Office Narcotics Strike Force monitored intercepted telephone calls within the organization between November 19, 2002, and December 17, 2002.  On December 17, 2002, at 6:00 a.m., officers on the strike force simultaneously executed nine search warrants at the various premises in Elizabeth, Newark and Roselle, and arrested Dawshon, Dawud, and Dawmeen.  The evidence presented at trial consisted primarily of the testimony of two members of the organization, i.e., Angel Aviles and Sherrodd Britt, who had entered into plea

agreements;[3] 128 intercepted telephone conversations between the Fitzgeralds and members of the organization; and evidence, including drugs, guns, and money, seized during the execution of the search warrants.

B.  The State Court Proceedings

The Fitzgeralds were tried before a jury from February 24, 2005, through March 15, 2005. Dawshon, Dawud and Dawmeen were found guilty on all 21 counts in the indictment; John was found guilty on some counts. After granting the State's motion for imposition of an extended sentence on each Fitzgerald brother, the trial judge sentenced each to an aggregate term of life in prison, plus 100 years, with a 65-year period of parole ineligibility. Each brother appealed. On June 30, 2008, in a single opinion, the Appellate Division affirmed their convictions and remanded for resentencing. See State v. Fitzgerald, 2008 WL 2572617 (N.J. Super. Ct., App. Div., June 30, 2008). On October 6, 2008, the New Jersey Supreme Court denied petitions for certification. See State v. Fitzgerald, 196 N.J. 597 (2008) (table). On November 25, 2008, the trial judge resentenced Dawud to an aggregate sentence of life plus

---

[3] Aviles and Britt sold drugs out of the Elizabeth apartment, which was open each day from 5:30 a.m. until 10:00 p.m., and had 500 to 600 customers a day.

4

100 years, with a 65-year period of parole ineligibility (the same as the original sentence).

On January 14, 2009, Dawshon and Dawud filed separate petitions for post-conviction relief in the trial court. On November 30, 2009, the trial court entered orders denying each petition. Dawud and Dawshon appealed, and on February 15, 2012, the Appellate Division affirmed in a single opinion. See State v. Fitzgerald, 2012 WL 469779 (N.J. Super. Ct., App. Div., Feb. 15, 2012). The New Jersey Supreme Court denied certification on November 9, 2012. See State v. Fitzgerald, 212 N.J. 459 (2012) (table); State v. Fitzgerald, 212 N.J. 460 (2012) (table).

C.  Procedural History of § 2254 Petition

On February 13, 2013, Dawud signed his Petition for a Writ of Habeas Corpus and handed it to prison officials for mailing to the Clerk. (ECF No. 1 at 18.) The Court notified him of his right to amend the petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and, in response, he indicated by letter dated July 2, 2013, that he wanted to file the amended § 2254 Petition attached to the letter as his one all-inclusive petition. (ECF Nos. 2, 3.) Dawud's all-inclusive Petition raises the following grounds:

> Ground One:  THE PETITIONER WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE TO:  (A)

5

      SUBJECT THE STATE'S CASE TO AN ADVERSARIAL TESTING DURING THE PRETRIAL SUPPRESSION HEARING TO CHALLENGE THE ADMISSIBILITY OF EVIDENCE OBTAINED PURSUANT TO WIRETAP WARRANTS AND NO-KNOCK SEARCH WARRANTS; (B) TO OBJECT TO THE STATE'S ADMISSION OF NUMEROUS HEARSAY WIRETAP TAPES AND TESTIMONY; (C) TO OBJECT TO PROSECUTORIAL MISCONDUCT OF THE STATE'S RELIANCE ON AN UNTESTED INFORMANT; AND (D) FAILING TO OBJECT TO ERRONEOUS JURY INSTRUCTIONS[.]  THEREFORE, THE CONVICTIONS SHOULD BE REVERSED.

      Ground Two:  THE TRIAL COURT FAILED TO GIVE CLEAR, ACCURATE, AND COMPLETE JURY INSTRUCTIONS.

      Ground Three:  WHEN CHARGING THE "LEADER" COUNT, THE TRIAL COURT ERRONEOUSLY EMPHASIZED THAT DEFENDANT NEED ONLY HAVE UPPER-ECHELON STATUS IN RELATION TO "ONE OTHER" PERSON IN THE ENTERPRISE.

      Ground Four:  THE TRIAL COURT ERRED BY REPEATEDLY INSTRUCTING THE JURY TO CONSIDER DEFENDANT'S "GUILT OR INNOCENCE."

(ECF No 4 at 21, 7, 8, 10.)

The State filed an Answer arguing that none of the four grounds raised in the Petition satisfies the standard for granting habeas relief under 28 U.S.C. § 2254(d).  Dawud filed a Reply arguing that he is entitled to habeas relief under § 2254(d)(1) because counsel was constitutionally ineffective.

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody

6

"in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court adjudicated petitioner's federal claim on the merits,[4] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 135 S.Ct. 1372, 1376 (2015). The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court

---

[4] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

7

that adjudicated the claim on the merits.  See Pinholster, 131 S.Ct. at 1398.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of

8

the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### III. DISCUSSION

A. Ineffective Assistance of Counsel (Ground One)

In Ground One, Dawud asserts that trial counsel was constitutionally ineffective in (1) failing at the suppression hearing to adequately challenge the admissibility of evidence obtained pursuant to wiretap warrants and no-knock search warrants; (2) failing to object to hearsay in the wiretapped recordings and testimony; (3) failing to object to the State's reliance on an untested informant; and (4) failing to object to erroneous jury instructions. (ECF No. 7 at 7.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A claim that counsel's assistance was so defective

9

as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam).  To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Id., 134 S.Ct. at 1083.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 1089 (quoting Strickland, 466

   (1) Defective Performance at Suppression Hearing

   In Ground One (A), Dawud asserts that counsel was ineffective in failing to "subject the State's case to an adversarial testing during the pretrial suppression hearing to challenge the admissibility of evidence obtained pursuant to

10

wiretap warrants and no-knock search warrants."  (ECF No. 7 at 7.)

Dawud raised this claim on appeal from the order denying post-conviction relief.  He argued that defense counsel failed to challenge the state's wiretaps on the ground that the State did not minimize the interception of non-relevant conversations.  (ECF No. 14-5 at 21-24.)  The Appellate Division found that counsel was not ineffective during the motion to suppress because there was probable cause for issuance of the warrants and the "statements in the affidavits were supported by sufficient factual underpinnings to justify issuance of the wiretap orders."  State v. Fitzgerald, 2012 WL 469779 at *22.

This Court must presume the correctness of the finding that the affidavits supporting the warrant applications were factually supported, as Dawud has not rebutted the finding with clear and convincing evidence.  The Appellate Division was not unreasonable in its application of Strickland when it concluded that counsel was not constitutionally deficient in moving to suppress the wiretap and no-knock warrants.

(2) Failure to Object to Admission of Hearsay

Dawud argues in Ground One (B) that counsel was deficient in failing to object to the admission of unspecified hearsay in the wiretaps and testimony.  Dawud raised this claim in passing on appeal from the denial of post-conviction relief, but his

11

appellate brief did not identify the challenged hearsay.  As Dawud did not identify in his Petition or state court briefs the hearsay which he claims his attorney should have objected to, Dawud has not shown that the Appellate Division unreasonably applied Strickland when it rejected this unsupported claim.

> (3) Failure to Object to State's Reliance on an Untested Informant

In Ground One (C) Dawud asserts that counsel was deficient in failing to object to Detective Sheridan's reliance on an untested informant in his affidavit seeking the warrants. Without elaboration, Dawud argued on appeal from the denial of post-conviction relief that case should be remanded because the trial court denied an evidentiary hearing and gave short shrift to many of his claims.  The Appellate Division found:

> Here, Detective Sheridan, who signed the affidavit of probable cause in support of the wiretap warrant, based his request on, among other things, what Dawshon characterizes as "[i]nformation received from an untested informant, hereinafter referred to as Informant B . . ."  The information provided by Informant B was corroborated by the plethora of other evidence cited in Detective Sheridan's affidavit, including multiple controlled drug purchases, witnessed narcotics activity and the defendants' extensive criminal records. This evidence was obtained from numerous sources, including Detective Sheridan, other Elizabeth police officers, a reliable confidential informant (Informant A), police department records, and telephone records.
>
> Dawshon has failed to show that, viewed within the totality of the circumstances, a challenge to the wiretap search warrant would have been meritorious.

12

State v. Fitzgerald, 2012 WL 469779 at *17-*18.

Again, this Court is required to presume the correctness of the finding that the information provided by Informant B was corroborated, as Dawud has not rebutted this finding with clear and convincing evidence.  The Appellate Division did not unreasonably apply Strickland when it rejected Dawud's claim that counsel was deficient in failing to challenge the issuance of the warrants based on the unreliability of informant B.

(4) Failure to Object to Erroneous Jury Instructions

In Ground One (D), Dawud argues that counsel was deficient in failing to object to erroneous jury instructions.  On appeal from the order denying post-conviction relief, the Appellate Division found that counsel was not deficient in failing to challenge the accomplice liability instruction because, "while a portion of the Model Charge was omitted, that portion generally repeated the charge the jury received [and], although the court does not appear to have specifically charged the jury that it had to consider accomplice liability separately for each defendant, the charge given implies that such consideration should have occurred." Fitzgerald, 2012 WL 469779 at *18.  The Appellate Division also found that counsel was not deficient in failing to challenge the vicarious liability and conspiracy instructions, as these instructions were not erroneous:  "Given the facts of the case, that Dawshon was alleged to have operated

13

a drug trafficking network with multiple 'employees,' charging the jury on both conspiracy and conspiracy based on vicarious liability was appropriate." Id.

Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," the New Jersey court was not unreasonable in its application of Strickland when it concluded that counsel was not deficient in failing to challenge the accomplice liability and conspiracy instructions. Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

B.   Due Process:  Instructions (Grounds Two, Three, Four)

Relying on the briefs filed on direct appeal, in Grounds Two, Three and Four, Dawud asserts that "the trial court failed to give clear, accurate, and complete jury instructions," (ECF No. 4 at 7), the kingpin or leadership instruction was erroneous, id. at 8, and the court "erred by repeatedly instructing the jury to consider defendant's 'guilt or innocence.'" Id. at 10.

In Waddington v. Sarausad, 555 U.S. 179 (2009), a habeas case, the Supreme Court emphasized the established principle that an ambiguity, inconsistency, or error in a state instruction does not violate due process unless the defendant

14

also shows that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Id. at 191 (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "In making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Id. (quoting Estelle, 502 U.S. at 72).

In this case, Dawud and his brothers challenged the jury instructions on direct appeal and also challenged counsel's failure to object to instructions on post-conviction relief. The Appellate Division determined that counsel was not deficient in failing to object to the jury instructions because the instructions were not improper or erroneous. In any event, even if the instructions regarding accomplice liability and employment of a juvenile may have been ambiguous or confusing, Dawud has not shown in Grounds Two and Three that the jury applied the instructions in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. See Waddington, 555 U.S. at 191; Estelle, 502 U.S. at 72. Accordingly, he is not entitled to habeas relief on Grounds Two or Three. See Williams v. Beard, 637 F. 3d 195, 223-25 (3d Cir. 2011) (rejecting § 2254 claim that the instruction unconstitutionally broadened the scope of accomplice liability

15

because petitioner failed to show that there was a reasonable likelihood that the jury applied the instruction in a manner that relieved the state of its burden of proving every element beyond a reasonable doubt); Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) ("[T]he jury instructions on justification . . . would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action.")

In contrast, Dawud argues in Ground Four that "the trial court erred by repeatedly instructing the jury to consider defendant's 'guilt or innocence.'" (ECF No. 7 at 10.) The record shows that the trial court instructed the jury that

> each defendant sits in this courtroom assumed to be
> innocent, unless and until you find the State has
> proven them guilty of, at least, one of these crimes
> and all of their elements beyond a reasonable doubt.
> The burden of proof is on the State and it never
> shifts.  There is no burden with respect to proof
> imposed upon the defendant.  No defendant is obliged
> to prove that he's innocent.  He sits in this
> courtroom assumed to be innocent.

(ECF No. 18-15 at 10-11.)

The trial court further instructed the jurors to determine "not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether

16

the State has proven beyond a reasonable doubt that the defendant is the person who committed the crime."  Id. at 14.

Dawud has not cited any Supreme Court case holding that, where a court has properly instructed a jury on the beyond-a-reasonable-doubt standard, a court's comments during trial that the role of the jury is to determine a defendant's "guilt or innocence" violates due process.  Moreover, the Supreme Court has itself has frequently observed that "the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence[.]").  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  See, e.g., United States v. Gaudin, 515 U.S. 506, 514 (1995) ("[T]he jury's constitutional responsibility is not merely to determine the facts, but to apply the law to those facts and draw the ultimate conclusion of guilt or innocence."); Taylor v. Kentucky, 436 U.S. 478, 485 (1978) ("This Court has declared that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial"); Stone v. Powell, 428 U.S. 465, 489-90 (1976) ("The costs off applying the exclusionary rule even at trial and on direct review are well known:  the focus of the trial, and the attention of the participants therein, are diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding.") (footnotes omitted); Williams v. Florida,

17

399 U.S. 78, 82 (1970) ("We find ample room in [our adversary] system, at least as far as 'due process' is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence."). Accordingly, the New Jersey courts did not unreasonably apply clearly established Supreme Court precedent when they concluded that the trial court's isolated references to "guilt or innocence" did not violate due process.  Dawud is not entitled to habeas relief on Ground Four.

## IV.  Certificate of Appealability

Dawud has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V. CONCLUSION

This Court denies the Petition with prejudice and denies a certificate of appealability.

                                                 **s/ Jerome B. Simandle**
                                                 JEROME B. SIMANDLE
                                                 Chief U.S. District Judge

Dated: **March 9, 2016**